IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | No. 91-570-09 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGINALD REAVES | : | |
| | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              APRIL 5, 2023

## I.    INTRODUCTION

Defendant was found guilty by a jury of one count of conspiracy and one count of possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), respectively, for his participation in the Junior Black Mafia ("JBM"), a violent drug trafficking organization in Philadelphia. He was sentenced to life imprisonment on October 20, 1992. See J. & Commitment, ECF No. 38.

Defendant now seeks compassionate release on the grounds that his medical conditions present "extraordinary and compelling" reasons for release from custody. See Def.'s Mot., ECF No. 726. Defendant seeks a reduction in his sentence to time served or to early supervised release. The Government agrees that Defendant's medical conditions constitute "extraordinary and compelling" reasons for release. Gov't Resp., ECF No. 728.

Moreover, Defendant and the Government argue that the § 3553(a) factors weigh in favor of release, given Defendant's age, medical conditions, time served, and low risk of recidivism. The Court agrees. For the following reasons, the motion will be granted.

## II.  BACKGROUND

Defendant was a member of the JBM, a violent organization in Philadelphia allegedly active from approximately 1985 to 1991. The members of the JBM conspired to engage in the sale and distribution of cocaine, crack cocaine, and heroin. The conspiracy often involved violent acts including murder and attempted murder. Although never a titular leader of the JBM, Defendant was a "squad leader," responsible for supervising other members of the organization. For instance, Defendant's status as a high-ranking member was known by others by means of a gold ring with the initials JBM spelled out in diamonds. Indictment ¶ 38, ECF No. 1.

Defendant previously sought a reduction in sentence under 18 U.S.C. § 3582(c)(2) following the enactment of Sentencing Guidelines Amendments 505 and 599. See ECF No. 471. The Court denied the motion, concluding that only Amendment 505 was retroactive, and this amendment alone did not affect Defendant's Guidelines Range because Defendant's offense level corresponded with the same guidelines range of life. See Mem. & Order, ECF

Nos. 499, 500. Defendant subsequently sought a reduction in
sentence after Sentencing Guideline Amendment 782 was made
retroactive. See ECF No. 537. The Court denied Defendant's
motion, finding that Amendments 505 and 782 did not "stack" to
further reduce his base offense level. See Order, ECF No. 616.

Defendant now argues that compassionate release is
warranted under 18 U.S.C. § 3582(c)(1)(A)(i) given his age (56
years old) and his "several severe medical conditions that
require constant attention and which have caused him much
discomfort." Def.'s Mot. at 9. Defendant's medical conditions
include Chron's disease and ulcerative colitis, prosthetic right
eye and impaired left eye vision, enlarged prostate,
schizophrenia, and a thyroid mass. Id. at 2. Defendant requires
"frequent clinical contacts to prevent hospitalization for
catastrophic events" and "may require some assistance with
activities of daily living, such as bathing, dressing, or
eating," he does not require daily nursing care, and some of his
self-care may be aided by other inmates. Id. at 6. He also notes
that, although some of his conditions are managed by medication,
there is no cure for other of his conditions, such as Crohn's
disease and schizophrenia. Id. at 8.

### III. LEGAL STANDARD

Under 18 U.S.C. § 3582(c), "the Court . . . upon motion of
the defendant, . . . may reduce the term of imprisonment (and

may impose a term of probation or supervised release . . . ),
after considering the factors set forth in section 3553(a) to
the extent they are applicable, if it finds that . . .
extraordinary and compelling reasons warrant such a reduction
. . . and that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission." 18
U.S.C. § 3582(c)(1)(A)(i). The Court first determines whether
"extraordinary and compelling" reasons exist; then, it
determines whether the § 3553(a) factors and policy statements
of the Sentencing Commission weigh in favor of release. United
States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020); see also
United States v. Aviles, No. 22-2319, 2022 WL 17847191, at *2
(3d Cir. Dec. 22, 2022) (noting that the § 3553(a) factors are
"independently dispositive" of an inmate's compassionate release
motion, even where clearly extraordinary and compelling
circumstances warranting release exist).

Section 3582 does not define extraordinary or compelling.
Courts have looked to dictionary definitions as well as the
Sentencing Guidelines to interpret the phrase. E.g., United
States v. Andrews, 12 F.4th 255, 260 (3d Cir. 2021). "The
ordinary meaning of extraordinary is '[b]eyond what is usual,
customary, regular, or common.' And the ordinary meaning of
compelling need is '[a] need so great that irreparable harm or
injustice would result if it is not met.'" United States v.

4

<u>Andrews</u>, 480 F. Supp. 3d 669 (E.D. Pa. 2020), <u>aff'd</u>, 12 F.4th 255 (3d Cir. 2021) (quoting <u>Extraordinary</u>, Black's Law Dictionary (10th ed. 2014), and then <u>Compelling Need</u>, Black's Law Dictionary (10th ed. 2014)). When the motion is initiated by the prisoner, rather than the Government, policy statements by the Sentencing Commission are advisory, rather than binding. <u>Andrews</u>, 12 F.4th at 259.

The Guidelines note that a medical condition may present "extraordinary and compelling" circumstances where it consists of a "serious physical or mental condition, . . . or deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," can also be a medical condition that supports "extraordinary and compelling" reasons for release. U.S.S.G. § 1B1.13 comment. (n.1(A)(ii)).

Although the Court may consider how much time remains in a prisoner's sentence when determining whether compassionate release is appropriate, <u>Pawlowski</u>, 967 F.3d at 330-31, "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance. '[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for

particular violations of a statute.'" Andrews, 12 F.4th at 260-
61 (quoting United States v. Thacker, 4 F.4th 569, 574 (7th Cir.
2021)).

If the Court finds that extraordinary and compelling
reasons exist, it then turns to the § 3553(a) factors to
determine whether release is an appropriate form of relief. As
relevant to a motion for compassionate release, the § 3553(a)
factors direct a court to consider:

> (1) the nature and circumstances of the offense and
>     the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to
>     promote respect for the law, and to provide just
>     punishment for the offense;
>     (B) to afford adequate deterrence to criminal
>     conduct;
>     (C) to protect the public from further crimes of
>     the defendant; and
>     (D) to provide the defendant with needed
>     educational or vocational training, medical care,
>     or other correctional treatment in the most
>     effective manner;
> . . . . [and]
> (6) the need to avoid unwarranted sentence disparities
>     among defendants with similar records who have been
>     found guilty of similar conduct.

18 U.S.C. § 3553(a); United States v. Spivey, 471 F. Supp. 3d
621. 623-24 (E.D. Pa. 2020); United States v. Armstrong, No. 21-
1749, 2021 WL 3161429 (3d Cir. July 27, 2021) (considering the
same subset of § 3553(a) factors); see also United States v.
Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020) (focusing on 18
U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B)). Although

"postsentencing rehabilitation evidence may be highly relevant to several of the § 3553(a) factors," Pepper v. United States, 562 U.S. 476, 491 (2011), a defendant's rehabilitation "alone shall not be considered an extraordinary and compelling reason," for compassionate release, 28 U.S.C. § 994(t).

## IV.  DISCUSSION

The Court first addresses whether Defendant's medical conditions are sufficiently severe as to constitute "extraordinary and compelling" reasons warranting release. The Court then considers whether the sentencing factors weigh in favor of Defendant's early release.

### A. Extraordinary and Compelling

Defendant's medical conditions, taken together, present "extraordinary and compelling" circumstances. Defendant's current medical conditions include thyroid dysfunction; enlarged prostate; ulcerative colitis; schizophrenia; polythetic right eye and left eye blindness; and Crohn's disease. Def.'s Mot. at 7-8. As Defendant notes, all of these conditions diminish his ability to provide self-care within prison; he often requires assistance from other inmates to perform activities of daily living, such as bathing and dressing. He is a CARE level 3 (out of a maximum of 4), meaning he is an "outpatient[] who ha[s] complex, and usually chronic, medical or mental health conditions and . . . require[s] frequent clinical contacts to

7

maintain control or stability of [his] condition, or to prevent hospitalization or complications." Fed. Bureau of Prisons, Care Level Classification at 3 (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

The Government similarly argues that, in light of Defendant's numerous medical conditions, he has a "likely diminished life expectancy without medical treatment best obtained from community medical facilities," which, together with "the very significant period of time he has already served, and the apparent absence of any danger to the public, warrants a reduction to time served." Gov't Resp. at 3. The Government emphasizes that Defendant's medical conditions require numerous and continuing appointments outside of his BOP facility, including infusions every eight weeks because of his Chron's disease. Gov't Resp. at 4-5. Moreover, the Government states that Defendant requires a number of major medical procedures in the near future--including a prosthetic eye replacement and surgical removal of a thyroid mass--which further support "extraordinary and compelling" reasons for release. Id.

The Court thus finds that extraordinary and compelling medical circumstances exist, justifying release. Defendant has seen a clinician, either in prison or at a satellite medical facility, at least monthly for an extended period of time. See Exhibit, ECF No 729. His need for care is clearly extensive; his

medical records for approximately the last year constitute nearly 200 pages. Additionally, his ability to provide self-care in the prison environment is reduced, and there is no indication that he will recover from his conditions while incarcerated.

## B. **The § 3553(a) Factors**

Having found that extraordinary and compelling reasons justifying release are present in this case, the Court next addresses whether the § 3553(a) factors weigh in favor, or against, Defendant's release.

Here, the § 3553(a) factors weigh in favor of release. Although Defendant was involved in a violent gang, he has already served a significant sentence and has demonstrated that both his medical conditions and rehabilitation place him at a low risk of recidivism. Defendant notes that he has scored a 5 on the Bureau of Prisons' PATTERN tool, which places him at a "minimal" risk of recidivism, both generally and in terms of violent offenses. See Exhibit, ECF No. 733, at 5; see also United States v. Derentz, 608 F. Supp. 3d 189 (E.D. Pa. 2022) (granting motion for compassionate release where a defendant could show extraordinary and compelling reasons for release, in the form of the Bureau of Prisons' failure to treat an eye condition which resulted in blindness, and where a defendant would be at a low risk of recidivism given that he would live with his wife and be subject to stringent supervision).

Defendant's offenses were undoubtedly serious. Although not
one of the leaders of the JBM, Defendant was a high-ranking
member. See Indictment ¶ 7, ECF No. 1; see also United States v.
Price, 13 F.3d 711, 716 (3d Cir. 1994). At times, Defendant
possessed a firearm while engaging in JBM-related activities.
Indictment ¶ 94. Defendant was also personally responsible for
selling at least three ounces of cocaine. Id. ¶ 117. Yet,
Defendant "did not have a significant prior record before
getting involved with the drug trafficking organization." Gov't
Resp. at 5-6. Thus, where nothing in a defendant's prison record
"raises concerns about violence or drug dealing" upon release,
and a defendant has served an extended sentence, there is a low
likelihood that a defendant will be a danger to the community.
United States v. Rodriguez, 451 F. Supp. 3d 392, 406 (E.D. Pa.
2020); cf. United States v. Martin, No. 21-2853, 2022 WL 621689,
at *2 (3d Cir. Mar. 3, 2022) (denying compassionate release
where the defendant had a violent criminal history and had not
previously been deterred from continuing to perpetrate violent
crimes although he had a clean disciplinary record and had
served more than twenty years into a life sentence).

Defendant further argues that compassionate release is
warranted because he has demonstrated significant
rehabilitation. Def.'s Mot. at 12-13. Although rehabilitation
alone does not justify release, the Court notes that Defendant

has demonstrated his commitment to bettering himself: he has an institutional job, has completed credit hours, and has earned his GED while in custody. Id. at 13. Defendant states that he is no longer a danger to the community, having already served 32 years in prison. Id. at 14-15. Defendant also expresses remorse and assures the Court that he will comply with the conditions of supervised release. Defendant also states that, following release, he will be focused on managing his health conditions, reconnecting with family, and acquiring and maintaining gainful employment. Id. The Government agrees that Defendant is at a low risk of recidivism--because of his rehabilitation and debilitating medical conditions--and has very few disciplinary infractions while incarcerated. Gov't Resp. at 6.

Moreover, compassionate release of Defendant would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" 18 U.S.C. § 3553(a)(6). At sentencing, Defendant's total offense level was found to be 45, with a criminal history category of III, making his guidelines sentence life imprisonment.[1] Defendant did not challenge the application of the Sentencing Guidelines or the

---

[1] Following the retroactive application of Amendments 505 and 782 to the Sentencing Guidelines, Defendant's base offense level was reduced from 40 to 38, and his total offense level became 43. See Mem. Op. 2, ECF No. 499. His Guidelines range remained life imprisonment after the amendment. Id.

11

length of his sentence on direct appeal. Price, 13 F.3d at 717, 732. It is not clear whether any death or serious bodily injury resulted from the use of the narcotics which Defendant distributed; however, the highest possible mandatory minimum sentence for his offenses was 20 years imprisonment. See 21 U.S.C. § 841(a). Defendant has already served 32 years imprisonment and has accrued approximately 5 years of good-time credit.

Of the twenty-six defendants convicted in relation to the JBM, only four--including Defendant Reaves--were sentenced to life imprisonment. Four of the other co-defendants, who were convicted of conspiracy only, were sentenced to 360 months imprisonment plus 5 years of supervised release. One co-defendant who was convicted of one count of conspiracy and one count of distribution of cocaine base, was also sentenced to 360 months imprisonment plus 5 years of supervised release. A co-defendant, who was convicted of conspiracy but acquitted on a distribution of cocaine charge, was sentenced to 292 months imprisonment plus 5 years of supervised release. Among the members of the JBM tried before that particular jury (not all of the defendants proceeded to trial, and those who did proceeded in three separate trials), Reginald Reaves received the longest sentence. See Price, 13 F.3d at 716-17. In a separate trial, the three leaders of the JBM were convicted of conspiracy to

distribution and to possess with intent to distribute cocaine
and heroin and possession with intent to distribute and
distribution of a controlled substance, in violation of 21
U.S.C. §§ 846 and 841(a)(1), respectively. United States v.
Thornton, 1 F.3d 149, 152 (3d Cir. 1993). In addition, two of
the three leaders were convicted of participating in a
continuing criminal enterprise, and another was convicted of a
firearms offense. Id. All three leaders of the JBM were
sentenced to life imprisonment. Id.

In its supplemental briefing, the Government notes that
only the four co-defendants who were sentenced to life
imprisonment currently remain incarcerated, "and Reaves' conduct
and history were less significant than those of the other three
defendants serving life terms." Of those three other defendants,
two were involved in homicides, and one was the titular leader
of the JBM for a period of time. Defendant Reaves was not known
to have personally participated in acts of violence, nor was he
ever a titular leader of the JBM. Gov't Suppl. Br. at 2, ECF No.
732. The Government further argues that Defendant's current
sentence--a life sentence--is "disparate from terms currently
imposed on similar offenders." Id. Although Defendant's offense
level under the Guidelines was 45, warranting a life sentence,
the Government notes that variances below life sentences are
common today, especially where a defendant did not commit any

13

acts of violence. Id. at 2-3; see also U.S. Sent. Comm'n, "Life Sentences in the Federal System" (July 2022), available at https://www.ussc.gov/sites/default/files/pdf/ research-and-publications/research-publications/2022/20220726_ Life.pdf. Thus, Defendant's release--after more than thirty years--would not create an unwarranted disparity among his co-defendants and would reduce any disparity among defendants in other cases sentences for similar drug conspiracy charges today.

   **V.   CONCLUSION**

   Accordingly, having found that Defendant Reginald Reaves has demonstrated "extraordinary and compelling" reasons for release, and that the § 3553(a) factors weigh in favor of release, the Court will grant Defendant Reginald Reaves' motion for compassionate release. An appropriate Order follows, reducing the life sentence to time served and setting forth supervised release with conditions thereto.